FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Dec 9, 2020

OFFICE OF THE CLERK

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Arkansas
Fort Smith Division

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| Residence and Premises located at | ) Case No. 2:20cm94 |
| 905 North 19ᵗʰ Circle | ) |
| Van Buren, Arkansas 72956 | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location):*

**Residence and premises located at 905 North 19ᵗʰ Circle, Van Buren, Arkansas 72956 more particularly described on Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

  X   evidence of a crime;

  X   contraband, fruits of crime, or other items illegally possessed;

  X   property designed for use, intended for use, or used in committing a crime;

  ☐   a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. § 2423(a) transportation in interstate commerce of a minor with intent to engage in criminal sexual activity for which any person can be charged with a criminal offense; 18 U.S.C. § 2251 production of an image using materials that have been shipped, mailed and transported in interstate and foreign commerce with intent that a minor engage in sexually explicit conduct; and evidence of 18 U.S.C. § 2252, the receipt and possession of child pornography using materials that have been shipped, mailed and transported in interstate and foreign commerce.

The application is based on these facts:  **See Affidavit of FBI Special Agent Robert Allen**

  X Continued on the attached sheet.

  ☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____ _____ )is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Allen, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **12/9/2020**
_____

_____
*Judge's signature*

City and state:  Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Robert Allen, your Affiant, am a Special Agent for the Federal Bureau of Investigation (FBI), being duly sworn, state the following is true and correct based upon my personal knowledge, investigation, and belief:

## **INTRODUCTION**

1.      Affiant is a Special Agent currently assigned to the Fort Smith Resident Agency of the Little Rock Division of the FBI. I have been employed as a Special Agent with the FBI for over thirteen years. During my employment with the FBI, I have received training concerning and have participated in the investigation of federal criminal offenses enumerated in Title 18, U.S.C. § 2423(a), specifically, criminal statutes involving the sexual exploitation of minors. Prior to my employment with the FBI, I was employed as a Certified Police Officer by the Van Buren, Arkansas, Police Department for ten years. During my employment as a Van Buren Police Officer, I received training and was involved in investigating criminal offenses. As part of my duties, I am assigned to the River Valley Child Exploitation Task Force operating out of the FBI Resident Agency (RA) in Fort Smith, Arkansas. I investigate criminal violations relating to crimes against persons utilizing the Internet, the sexual exploitation and trafficking of minor children through the Internet, child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography. I have received training in the area of Internet crimes against persons, sexual exploitation and trafficking of minor children through the Internet, child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of venues individuals utilize to advertise and exploit minor children for sexual encounters via the Internet as well as child pornography in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, several of which involved

1

Internet crimes against persons, sex trafficking of minors, child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.      This Affidavit is being submitted in support of an application for a search warrant for the premises where Jeffrey Callen Gonzagowski, Jr. (GONZAGOWSKI) resides at **905 North 19th Circle, Van Buren, Arkansas 72956** (the subject premises**)**, in the Western District of Arkansas, Fort Smith Division, and further described in Attachment A. The residence located at **905 North 19th Circle in Van Buren, Arkansas**, is where GONZAGOWSKI has lived since approximately December 2019.

3.      Fort Smith FBI conducted physical surveillance on locations associated with GONZAGOWSKI in Van Buren, Arkansas, over a four-week period in November 2020, to include a residence located at **905 North 19th Circle, Van Buren, Arkansas**, and Fort Smith FBI consistently observed GONZAGOWSKI at **905 North 19th Circle, Van Buren, Arkansas**, during non-business hours.

4.      Arkansas Department of Motor Vehicle (DMV) records for vehicle tag # DV49912 indicate the tag is associated with a 1997 Ford F250 pick-up, red and white in color, that Fort Smith FBI has observed GONZAGOWSKI driving during physical surveillance of GONZAGOWSKI. DMV records indicated the 1997 Ford F250 pick-up, VIN# 1FTHX25F1VEC30468, bearing vehicle tag # DV49912, is registered to JEFFREY GONZAGOWSKI, at **905 North 19th Circle, Van Buren, Arkansas 72956**. Vehicle tag # DV49912 was issued to GONZAGOWSKI October 22, 2020.

5.     Affiant has probable cause to believe that based upon the investigation conducted to date and as set forth in more detail below, there will be evidence at the subject premises of the following statutory violations: 18 U.S.C. § 2423(a), the interstate transportation of a minor with intent to engage in criminal sexual activity; 18 U.S.C. § 2251, the production of an image of a minor engaged in sexually explicit conduct; and 18 U.S.C. § 2252, the possession of child pornography.  This Affidavit does not set forth all of my knowledge about this matter.

6.     Based on the investigation to date, Affiant has probable cause to believe that evidence will be found at the subject premises that GONZAGOWSKI violated 18 U.S.C. § 2423(a), in or about September 2014, by transporting JANE DOE in interstate commerce from the Western District of Arkansas to Oklahoma with intent to engage in any sexual activity for which a person can be charged; namely, Rape, in violation of Arkansas Code Annotated 5-14-103(a)(3)(A); all in violation of Title 18, U.S.C. § 2423(a).

7.     Based on the investigation to date, Affiant has probable cause to believe that evidence will be found at the subject premises that GONZAGOWSKI has violated 18 U.S.C. § 2251, in the Western District of Arkansas, Hot Springs Division, between in or about 2014 through and including in or about 2019, by producing a visual image with an iPhone, and using JANE DOE, who was less than 18 years old, with intent that JANE DOE engage in sexually explicit conduct.  Affiant is aware that an iPhone is manufactured outside the State of Arkansas with materials that have been mailed, shipped and transported in interstate and foreign commerce.

8.     Based on the investigation to date, Affiant has probable cause to believe that evidence will be found at the subject premises that GONZAGOWSKI has violated 18 U.S.C. § 2252, in the Western District of Arkansas, Fort Smith Division, between in or about 2014 through and including on or about December 10, 2020, by possessing an image of JANE DOE, a minor,

3

engaged in sexually explicit conduct and that the image was produced with materials that were mailed, shipped and transported in interstate and foreign commerce.

9.      Affiant knows from training and experience as an investigator of child exploitation cases that evidence of the interstate transportation of a minor with intent to engage in criminal sexual activity can be found by examining records commonly kept at home to include financial records such as bank and savings accounts, credit card statements, travel diaries, toll receipts, fuel and food receipts, photographs taken before, during and after interstate travels, and lodging receipts.  Further, Affiant is aware from personal experience as a federal taxpayer that taxpayers are subject to audit by the Internal Revenue Service for a period of seven years.  Based on other investigations Affiant has conducted into violations of 18 U.S.C. § 2423(a), Affiant has found individuals who retain bank statements, cancelled checks, credit card statements and receipts, fuel and mileage records, and vehicle maintenance logs that cover a period of time longer than the preceding seven years.  Further, Affiant has learned that GONZAGOWSKI worked for trucking/carrier companies in 2013 and 2014.  Based on Affiant's knowledge and experience, Affiant is aware that driving and working for trucking companies and carrier services on a contract basis, as GONZAGOWSKI frequently did throughout 2013 and 2014, would have required him to maintain records, receipts, and travel logs for up to seven years for tax purposes as a contract employee or driver.  Therefore, Affiant has reason to believe that the records set forth in Attachment B that evidence interstate transportation of a minor from Arkansas to Oklahoma in 2014 in violation of 18 U.S.C. § 2423(a) will have been retained by GONZAGOWSKI and are located at the subject premises.

10.     Affiant knows from training and experience as an investigator of child exploitation cases that evidence of the production and possession of an image of a minor engaged in sexually

explicit conduct can be found by seizing and searching electronic devices that are capable of photographing, recording, preserving and maintaining images of minors engaged in sexually explicit conduct. Based on the investigation to date, Affiant has probable cause to believe that evidence will be found at the subject premises, on one or more electronic devices, that GONZAGOWSKI violated 18 U.S.C. § 2251, between on or about 2014 and 2019, by using a cellular device to produce a visual image of JANE DOE's unclothed vagina as the focus of the image and/or a visual image with GONZAGOWSKI's hand and or fingers depicted near JANE DOE's unclothed vagina and which was produced by GONZAGOWSKI using his cell phone and was taken at a motel in Hot Springs, Arkansas, sometime between 2014 and 2019. JANE DOE was less than 18 years old between 2014 and 2019. Affiant also knows from training and experience as an investigator of child exploitation cases that those who produce images of minors engaged in sexually explicit conduct retain and therefore possess these contraband images for many years and keep the contraband images on devices that are easily accessible to the producer of the images.

11.    Affiant is aware from experience and law enforcement training that individuals who seek to view, trade, and keep images of child pornography, keep these images for a long period of time. In Affiant's experience and training, Affiant has found that those who are interested in child pornography retain child pornography for many years because child pornography is illegal and difficult to obtain and produce. Therefore, Affiant knows that an individual who produces and/or trades and possesses child pornography will go to great measures to maintain and conceal child pornography. Additionally, Affiant is aware through training and experience, that child pornography producers utilize child pornography materials to relive their sexual experiences with minors, especially if they have lost access to a minor that was being sexually abused. This makes

child pornography that a person has personally produced more valuable to the child pornography producer/collector, and the child pornography producer will go to even greater lengths to maintain child pornography images/videos, as the images/videos have personal connections to and value to the producer. Affiant is aware from investigating another case that a child pornography collector obtained child pornography images when he was in high school and kept those images for the next five years in order to view the child pornography on a weekly basis.

## STATUTORY AUTHORITY

12.     Title 18, U.S.C. § 2251(a) prohibits any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. Specifically, Section 2251 of Title 18 of the United States Code, makes it illegal to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for purposes of producing visual depictions of that conduct. Any individual who

attempts or conspires to commit a child pornography offense is also subject to prosecution under federal law.

13.     Title 18, U.S.C. § 2252(a)(1) prohibits a person from knowingly transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mail, any visual depiction if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.  Title 18, U.S.C. § 2252(a)(2) prohibits a person from knowingly receiving, or distributing, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, . . . if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.  Title 18, U.S.C. § 2252(a)(4) prohibits a person from knowingly possessing or accessing with intent to view a matter which contain[s] any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce . . . by any means including by computer if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

14.     "Child Pornography" is defined in  Title 18, U.S.C. § 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor

engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

15.     Title 18, U.S.C. § 2256(2)(A) defines "sexually explicit conduct" to mean actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same sex or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.  Title 18, U.S.C. § 2256(5) defines "visual depiction" to include undeveloped film and videotape, data stored on a computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

16.     Title 18, U.S.C. § 2423(a) provides, in pertinent part that:

> A person who knowingly transports an individual who has not attained the age of eighteen years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense . . . .

17.     The "sexual activity for which any person can be charged with a criminal offense" that pertains to this investigation is Rape, a violation of Arkansas Code Annotated 5-14-103(a)(3)(A) (deviate sexual activity with another person).

18.     In 2014, Arkansas Code Annotated 5-14-103(a)(3)(A), Rape, a class Y Felony, was in effect. That statute made it a criminal offense for a person to commit rape by engaging in sexual intercourse or deviate sexual activity with another person less than fourteen years of age.  Deviate Sexual Activity was defined in Arkansas Code Annotated 5-14-101 as "the penetration, however slight, of the anus or mouth of one person by the penis of another person; or the penetration,

however slight, of the vagina or anus of one person by any body member or foreign instrument manipulated by another person."

## TRAINING AND EXPERIENCE IN THE INVESTIGATION OF CHILD PORNOGRAPHY AND SEXUAL EXPLOITATION OF CHILDREN

19.     In Affiant's training and experience, persons involved with child pornography or other forms of online sexual exploitation of children generally prefer to store depictions of child pornography or other similar evidence of their crimes on computers, removable storage devices, email accounts or other hardware or media that can store visual depictions in digital form.  The capacity of external hard drives, flash drives, and other storage media has increased dramatically in recent years as the cost of storage media has gone down.  As a result, persons involved with child pornography and other online child predators may electronically store contraband and other electronic evidence for years at little or no cost, including remotely on servers provided by online "cloud" storage services, without the need to delete files to make room for other files.  In Affiant's training and experience, Affiant knows that information and photographs are readily transferrable from computers to cellular telephones, and can be easily transported to different locations, or sent electronically to online or "cloud" storage services, such as those offered by Google and Apple.

20.     Based on Affiant's training and experience, and the experience of other agents, your Affiant knows that individuals involved in child pornography almost always retain copies of the sexually explicit material they receive.  Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests.  It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a secure place, usually a residence, to avoid detection by law enforcement.  Your Affiant has also learned from his training and experience, and from talking with other seasoned law enforcement officers, that possession of

9

child pornography is continuing in nature, and oftentimes collectors of child pornography do not quickly dispose of images they have received.   To the contrary, those involved in child pornography and other forms of online sexual exploitation of children commonly retain images and other relevant digital evidence and store it in secure locations for long periods of time.  These locations often include the offenders' home computers, smart phones and other external devices, email accounts, and remote "cloud" storage services, like those offered by Google, Apple, and other companies.

21.    According to information Affiant has learned from agents assigned to the FBI's Behavioral Science Unit, individuals who obtain sexual gratification with minors often collect "child erotica" that include photographs that are not sexually explicit and may have drawings, sketches, fantasy writings, diaries, and written communications that elicit a sexual interest in minors.  These items are often kept hidden from purview of other adults and are considered valuable keepsakes of an interaction with a minor.  Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases.  *See United States v. Riccardi*, 258 F.Supp.2d 1212 (D. Kan. 2003); *See also United States vs. Caldwell*, 181 F.3d 104 (6th Cir. 1999) (unpublished) (child erotica admissible under Federal Rules of Evidence 404(b) to show knowledge or intent).

**PROBABLE CAUSE TO SEARCH PROPERTY**
**Background of the Investigation**

22.    Law enforcement learned that in October 2020, JANE DOE, who was born in March 2006, had been forensically interviewed regarding her disclosure that she had been sexually assaulted by GONZAGOWSKI when GONZAGOWSKI was married to A.F., JANE DOE's mother. A.F. married GONZAGOWSKI in February 2008 and divorced him in June 2013. During

the marriage, A.F. and GONZAGOWSKI had a child together and the child is the younger half-sister of JANE DOE.

23.     After A.F. divorced GONZAGOWSKI, he married C.F. on September 5, 2014. GONZAGOWSKI and C.F. resided at XXXXX Jake Smith Road in Spiro, Oklahoma.  C.F. and GONZAGOWSKI separated in December 2014 and their divorce was final in February 2015.

24.     Affiant has learned from the investigation that in September 2014, GONZAGOWSKI travelled to Mount Ida, Arkansas, to pick up the younger half-sister of JANE DOE for a weekend visitation.  JANE DOE accompanied her younger half-sister on the weekend visitation.  Affiant has learned from A.F. that A.F. took JANE DOE and JANE DOE's younger half-sister to meet GONZAGOWSKI at the Subway restaurant in Mount Ida, Arkansas. GONZAGOWSKI then transported JANE DOE and her younger half-sister from Mount Ida in the Western District of Arkansas, traveling through the Fort Smith Division of the Western District of Arkansas, and crossing the Arkansas-Oklahoma state line to Spiro, Oklahoma.  Affiant is aware that transportation of a minor across a state line constitutes transportation of a minor in interstate commerce.

25.     Based upon forensic interviews of JANE DOE, Affiant has learned that while JANE DOE was in Spiro, Oklahoma, GONZAGOWSKI penetrated JANE DOE's vagina with his fingers. JANE DOE was eight years old when this occurred and GONZAGOWSKI was 32 years old.  The penetration of JANE DOE's vagina by GONZAGOWSKI constituted conduct that is defined as deviant sexual activity under Arkansas law.

26.     Affiant has learned in the investigation that at the conclusion of the weekend visitation, GONZAGOWSKI transported JANE DOE and other minors from Oklahoma across the Oklahoma-Arkansas state line, through the Western District of Arkansas, Fort Smith Division, to

11

meet A.F. at the Subway restaurant in Mount Ida, Arkansas. Affiant knows from personal experience and having driven from Mount Ida, Arkansas, to Spiro, Oklahoma, that the most direct route by vehicle mode of travel from Spiro, Oklahoma, to Mount Ida, Arkansas, is through and across the Western District of Arkansas, Fort Smith Division.

27.     JANE DOE's forensic interviews took place on September 4, 2020, and October 29, 2020, at the Cooper-Anthony Mercy Child Advocacy Center in Hot Springs, Arkansas. JANE DOE stated during both forensic interviews that she had been sexually abused for a period of years by GONZAGOWSKI. According to JANE DOE, GONZAGOWSKI began touching her inappropriately during the period of time in JANE DOE's life when she participated in cheer competitions and her mother worked nights. Affiant has learned that the period of time described by JANE DOE when she participated in cheer competitions and her mother worked nights was prior to September 2014.

28.     JANE DOE described the abuse during the forensic interviews as GONZAGOWSKI touching her vagina with his fingers both on the outside and inside of her vagina. JANE DOE reported the abuse eventually evolved into GONZAGOWSKI putting his penis into her private area (referring to her vagina). She reported the abuse continued until she was around twelve or thirteen years old, at which time she no longer was around GONZAGOWSKI. Based on JANE DOE's date of birth in 2006, the sexual abuse continued through at least 2018 or 2019.

29.     JANE DOE stated that her younger half-sister always wanted JANE DOE to accompany the younger half-sister during the younger half-sister's visitations with GONZAGOWSKI, and JANE DOE did accompany the younger half-sister on visitations. During the forensic interview, JANE DOE stated that she was sexually abused by

GONZAGOWSKI during his visitations with her younger half-sister at locations in Arkansas in Hot Springs and Van Buren, and in Oklahoma.

30.     JANE DOE stated that on one particular trip that she accompanied her younger half-sister for a visitation weekend with GONZAGOWSKI, GONZAGOWSKI used his fingers to touch JANE DOE both outside and inside of her vagina. Affiant has reason to believe this occurred when JANE DOE was transported from Arkansas to Oklahoma by GONZAGOWSKI in September 2014.

31.     JANE DOE told the forensic interviewers that GONZAGOWSKI continued to sexually abuse her after that particular weekend she was in Oklahoma. She explained the sexual abuse escalated into sexual intercourse. She stated that GONZAGOWSKI would insert his penis into her vagina. JANE DOE gave details of being sexually abused by GONZAGOWSKI when he traveled to Hot Springs to visit his daughter and would have sexual intercourse with JANE DOE. She described motels in Hot Springs where this occurred. One of the motels that JANE DOE described was "across from the dog tracks" in Hot Springs. Affiant has learned that the motel JANE DOE was referring to as "across from the dog tracks" in Hot Springs was the Best Western motel. JANE DOE also recalled one of the times that GONZAGOWSKI penetrated her vagina was in a motel in Hot Springs around the time of New Year's.

32.     Affiant has reviewed records from the Best Western motel located across from the dog tracks in Hot Springs, Arkansas, and found that GONZAGOWSKI stayed at the motel on December 26, 2015, and December 29, 2018. Affiant knows that December 26, 2015, is near the date of New Year's; a date that JANE DOE recalled GONZAGOWSKI sexually assaulted her at a motel in Hot Springs. Fort Smith FBI obtained motel records from the Days Inn motel as described by JANE DOE and found that GONZAGOWSKI stayed at that motel on August 15,

2015.  Affiant knows that August 2015 was a period of time in which GONZAGOWSKI would have been able to have contact with JANE DOE.

33.     JANE DOE reported that she believed GONZAGOWSKI used his cell phone to take a photo while he was penetrating her vagina with his fingers.  JANE DOE stated she believed this occurred when she saw that the cell phone camera's flash was turned on.  According to JANE DOE, GONZAGOWSKI then put his cell phone away, continued touching her and then put his penis inside her vagina.  Therefore, Affiant has probable cause to believe that the image produced by GONZAGOWSKI as he was about to or did penetrate her with his finger is an image of JANE DOE engaged in sexually explicit conduct and that image will be found in an electronic device at the subject premises.  Although JANE DOE could not state the exact date that she believed GONZAGOWSKI took a photo of himself attempting to touch or touching her genital area, she could recall it occurred during one of the times that he raped her at a motel in Hot Springs, Arkansas, when she would have been eleven or twelve years old.  Based on this information, Affiant has probable cause to believe that the image produced by GONZAGOWSKI as he attempted to or did penetrate JANE DOE with his finger is an image of JANE DOE engaged in sexually explicit conduct that will be found on an electronic device at the subject premises.

34.     Based upon the disclosure by JANE DOE of sexual abuse, A.F. was interviewed by law enforcement.  A.F. told law enforcement that she recalled only one trip to Oklahoma the children took with GONZAGOWSKI.  A.F. remembered that she met GONZAGOWSKI on a Friday or Saturday in September 2014 at a Subway in Mount Ida, Arkansas, to deliver the children to him for a weekend visitation.  A.F. stated that the children were returned to her on a Sunday.  A.F. stated that she remembered using her bank card to buy food at the Subway when the children were returned to Arkansas by GONZAGOWSKI.  A.F. also recalled this trip occurred in

14

September of 2014 because it was around her birthday. A.F. stated she was confident that the only time she ever made a purchase at the Subway in Mount Ida, Arkansas, was the time she met GONZAGOWSKI to pick up the children after the children had spent the visitation weekend with GONZAGOWSKI.

35.     A.F. provided Affiant a bank record that showed a purchase made at a Subway in Mount Ida. The bank record showed a Subway purchase cleared A.F.'s bank account on September 9, 2014. Therefore, Affiant has reason to believe that it was in September 2014 when JANE DOE was transported in interstate commerce from the Western District of Arkansas to Oklahoma by GONZAGOWSKI.

36.     A.F. told law enforcement that she recalled JANE DOE sent her a photograph from JANE DOE's cellphone when JANE DOE was in Oklahoma. The picture was a selfie of JANE DOE and the son of C.F., the then-wife of GONZAGOWSKI. The selfie taken together of JANE DOE and the son of GONZAGOWSKI's then-wife who lived in Spiro, Oklahoma, corroborates Affiant's belief that JANE DOE was in Oklahoma in September 2014.

37.     TLOxp-Advanced report (database use by Law Enforcement), obtained by the Fort Smith FBI, indicated a previous address associated with GONZAGOWSKI was XXXXX Jake Smith Road, Spiro, Oklahoma during September 2014. This information corroborates the belief that GONZAGOWSKI transported JANE DOE to a residence that was located in Spiro, Oklahoma, during September 2014.

38.     Based upon Affiant's knowledge of JANE DOE's date of birth and her statement that she believed the image of her genitals was photographed by GONZAGOWSKI when she was eleven or twelve years old, Affiant believes GONZAGOWSKI produced an image of a minor engaged in sexually explicit conduct by using his cell phone to produce this image in 2016 or 2017.

Through experience and training, Affiant has a reasonable belief that GONZAGOWSKI would retain a Child Pornography video or image that he produced in 2016 or 2017. Therefore, Affiant has probable cause to believe that evidence of GONZAGOWSKI's violation of Title 18, U.S.C. § 2251 will be located at the subject premises.

39.     Affiant knows from personal experience and investigations involving electronic media that people upgrade cell phones every couple of years and that videos and images that are valuable to the cell phone owner are downloaded to the next, newer phone. Additionally, Affiant has found during the execution of several search warrants that defendants will retain old cellular phones for many years. Your Affiant has found from conversations and briefings with other investigators of child exploitation cases, that individuals retain an obsolete cell phone because it has child pornography on the cell phone, even though the individual uses a newer model cell phone for regular day-to-day phone services. Affiant is aware that for those who obtain sexual gratification from child pornography, an image or video from contact between the producer and the minor victim is highly valuable to the producer.

40.     Based on the aforementioned and previous experience, Affiant would expect GONZAGOWSKI to possess the cell phone he used to record child pornography of JANE DOE. In addition to maintaining child pornography, collectors of child pornography will transfer child pornography images/videos to other forms of media to further conceal and or access the material again. Child pornography collectors will often transfer images to small concealable thumb drives which are easier to conceal at a residence and hide from family members and law enforcement. The transfer of child pornography to other media also makes it possible for child pornography collectors to view their collection from other devices such as computers and tablets.

41.     Based on Affiant's experience, Affiant knows that the execution of most warrants involving computerized information requires special agents to seize a portion or all of a smart phone and/or computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.  This is true because of the following:

a.     Volume of evidence and time required for examination:  Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information.  This sorting process can take up to several months to complete, depending on the volume of data stored.  Therefore, in most cases, reviewing that information for items described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt solely via an on-site examination.

b.     Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a variety of forensic tools.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data.  In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment, in most instances, is essential to a complete analysis.

Therefore, authorization is sought to seize, image, or otherwise copy any and all digital media in Attachment B that are seized from **905 North 19th Circle, Van Buren, Arkansas**.

42.     Based on the information contained in this Affidavit, Affiant respectfully requests a Search Warrant be authorized for the search of **905 North 19ᵗʰ Circle (the SUBJECT PREMISES) in Van Buren, Arkansas, 72956, (more particularly described in Attachment A)**, to search for and seize documents, records and receipts of interstate travel with minors, as described in Attachment B, and to search for and seize electronic devices, as described in Attachment B, as there is probable cause to believe that those items contain evidence of violations of Title 18, U.S.C. §§ 2423(a), 2251 and 2252,  are expected to be found at **905 North 19ᵗʰ Circle, Van Buren, Arkansas**,  and are set forth in Attachment B that is submitted herewith and incorporated by reference.

Robert F. Allen, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 9ᵗʰ day of December, 2020.

Honorable Mark E Ford
United Stated Magistrate Judge

18

## ATTACHMENT A
## DESCRIPTION OF THE PROPERTIES TO BE SEARCHED
## (SUBJECT PREMESIS/VEHICLE)

The SUBJECT PREMESIS is a residential home and is located in Crawford County, at **905 North 19th Circle, Van Buren, Arkansas**.   The SUBJECT PREMESIS is a residential single-family home, with faded peach colored siding and brown brick.  The front of the SUBJECT PREMESIS faces East and has the number "905' posted over the garage door.   The numbers "905" are visible from the street.   The SUBJECT PREMESIS, **905 North 19th Circle, Van Buren, Arkansas**, is depicted in the two color photographs shown below:



Front (door side) of SUBJECT PREMESIS, facing East (**905 North 19th Circle, Van Buren, Arkansas**).



Google Maps ariel and front views of SUBJECT PREMESIS.

19

**ATTACHMENT B**
**ITEMS TO BE SEARCHED FOR AND SEIZED**
**(REGARDING CHILD SEXUAL ABUSE MATERIAL)**

1. Any and all computer, electronic/digital devices owned by and/or utilized by JEFFREY GONZAGOWSKI, but not limited to: Laptop/Desktop computers, hard drives, thumb drives, gaming devices, cellular phones, ipad/tablets, which could contain the following:

2. Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography or images of minors, nude or otherwise, in any form wherever it may be stored or found including, but not limited to:

    i.   Originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    ii.  Videos (aka: motion pictures, films, digital recordings), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii. Images self-produced of the defendant and minors, and attempts to take or produce such.

    iv.  Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored.

    v.   Internet history, search history, including CACHE memory related to Internet searches for child pornography or websites that could contain such.

3. Information or correspondence pertaining to the sexual exploitation of minors or solicitation of such for sexual activity, including any and all information such as e-mail, chat logs, text messages, etc. related to the sexual exploitation of children, including but not limited to:

    i.   Correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals (including Contact lists), access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    ii.  Records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by

20

computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

   iii.   Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors

      a.   Including messages sent to individuals discussing the sexual assault or desire to sexually assault minors or discussion of online posts regarding images of child pornography.

4. Records evidencing ownership of the items seized, including in and all lists of names, telephone numbers, addresses and contacts, and the content of voice mails and text messages and Internet based applications.

5. Any and all security devices, to include encryption devices, needed to gain access to the phone.

6. Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, U.S.C. § 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

7. In searching the data, the computer personnel may examine and copy all of the data contained in the subject item to view their precise contents and determine whether the data falls within the items to be seized. In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.

## ITEMS TO BE SEARCHED FOR AND SEIZED
## (REGARDING TRAVEL/TRANSPORTATION JANE DOE IN 2014)

8. Any and all bank records, trucking records, logbooks, receipts, toll records, employment records, bills of lading, maps, diaries, day timers, appointment books, calendars, notes and ledgers, vehicle maintenance records, and any other records relating to and evidence of travel from 2013, through and including September 2014, to December 31, 2019, for JEFFREY GONZAGOWSKI.

9. Any and all Hotel receipts, Hotel membership records, food receipts, travel records, records related to purchase of items, and travel, for JEFFREY GONZAGOWSKI from in or about 2013 through and including 2019.

10. Any and all registration records, personal property records, vehicle license records, and all documents evidencing the residency of JEFFREY GONZAGOWSKI from in or about 2013 through and including 2019.